1   AUSTIN B. KENNEY (State Bar No. 242277)
    abk@severson.com
2   RHONDA L. NELSON (State Bar No. 116043)
    rln@severson.com
3   DIANE P. CRAGG (State Bar No. 221121)
    dpc@severson.com
4   SEVERSON & WERSON
    A Professional Corporation
5   One Embarcadero Center, Suite 2600
    San Francisco, California 94111
6   Telephone: (415) 398-3344
    Facsimile: (415) 956-0439
7
    Attorneys for Defendant
8   BANK OF AMERICA, N.A.

9

10

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

13

| | |
|---|---|
| 14  TERRY ANN MCINTOSH, individually and as Co-Trustee of the Terry Ann McIntosh Trust; and MELANIE SMITH, as Co-Trustee of the Terry Ann McIntosh Trust, | Case No. |
| 15 | [formerly San Francisco County Superior Court, Case No. CGC-18-567720] |
| 16      Plaintiffs, | |
| 17   vs. | **DEFENDANT BANK OF AMERICA, N.A.'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §1441** |
| 18  BANK OF AMERICA, N.A.; CARE.COM, INC. dba CARE.COM; MELETOFETOFE UHILA; TONY YAMINI; DOES 1 through 100, inclusive, | |
| 19 | |
| 20      Defendants. | Action Filed:    June 28, 2018 |
| 21 | Removal Date:   August 27, 2018 |

22

23

24   **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

25   **NORTHERN DISTRICT OF CALIFORNIA, AND ALL PARTIES:**

26      **PLEASE TAKE NOTICE** that Defendant Bank of America, N.A., ("BofA") provides this

27   Notice of Removal based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1331,

28   and hereby removes to this Court the state court action described below, as follows:

1.     Plaintiffs Terry Ann McIntosh, individually and as Co-Trustee of the Terry Ann McIntosh Trust, and Melanie Smith, as Co-Trustee of the Terry Ann McIntosh Trust ("Plaintiffs") filed a civil action against BofA in the Superior Court of San Francisco County, California, on June 28, 2018, entitled *Terry Ann McIntosh, individually and as Co-Trustee of the Terry Ann McIntosh Trust, and Melanie Smith, as Co-Trustee of the Terry Ann McIntosh Trust v. Bank of America, N.A., Care.com, Inc. dba Care.com, Meletofetofe Uhila, Tony Yamini, et al.*, bearing San Francisco Superior Court case number CGC-18-567720 (the "State Court Action").  The Complaint asserts claims against BofA for:  1) Financial Elder Abuse; 2) Negligence; 3) Violation of Electronic Funds Transfer Act; 4) Unfair Business Practices; and 5) Breach of Fiduciary Duty.

2.     This notice of removal is timely under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a) because the Summons and Complaint were served upon BofA on July 26, 2018.  This notice of removal is filed on Monday, August 27, 2018 – the next business day following 30 days after the date of service of the Summons and Complaint.

3.     Defendant BofA has not yet filed an answer or otherwise responded to Plaintiffs' Complaint in the State Court Action.

4.     Upon information and belief, defendant Tony Yamini was served with the Summons and Complaint, but has not yet filed an answer or otherwise responded to Plaintiffs' Complaint in the State Court Action.

5.     Upon information and belief, defendant Care.com, Inc. dba Care.com ("Care.com") has been served with the Summons and Complaint, but has not yet filed an answer or otherwise responded to Plaintiffs' Complaint in the State Court Action.

6.     Upon information and belief, defendant Meletofetofe Uhila ("Uhila") has been served with the Summons and Complaint, but has not yet filed an answer or otherwise responded to Plaintiffs' Complaint in the State Court Action.

**FEDERAL QUESTION JURISDICTION**

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The Complaint alleges a claim for relief and arises under the following federal statute: the Electronic Funds Transfer Act (15 U.S.C. §§ 1693g and 1693f). *See, e.g., Rivet v. Regions Bank*

1  *of Louisiana*, 522 U.S. 470 (1998) (defendant may remove to federal district court under federal

2  question jurisdiction "when a federal question is presented on the face of the plaintiff's properly

3  pleaded complaint").

4       8.     This Court has supplemental jurisdiction over all other claims asserted by Plaintiffs

5  pursuant to 28 U.S.C. § 1367(a) and 28 U.S.C. § 1441(c).

6  **AMOUNT IN CONTROVERSY**

7       9.     The amount in controversy exceeds $75,000, exclusive of interest and costs.  (*See*

8  Complaint, ¶ 1.)

9  **CONSENT TO REMOVAL**

10       10.    Defendant Tony Yamini has consented to this removal.

11       11.    Defendant Care.com has consented to this removal.

12       12.    Defendant Uhila represented to counsel for BofA that she was <u>not</u> served with the

13  Summons and Complaint, and therefore could not consent or object to this removal.  *See, e.g.,*

14  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-51 (1991) ("one becomes a

15  party officially, and is required to take action in that capacity, only upon service of a summons or

16  other authority-asserting measure stating the time within which the party served must appear and

17  defend").

18  **VENUE**

19       13.    Venue in this Court is proper pursuant to 28 U.S.C. § 1441(a) because this is the

20  district that embraces the county in which Plaintiffs filed the State Court Action.

21       14.    Pursuant to 28 U.S.C. § 1446(d), BofA is filing this notice of removal with this

22  Court, will provide written notice of the removal of this action to counsel for Plaintiffs, counsel

23  for defendant Care.com and defendants Uhila and Yamini, and notice thereof will be filed with the

24  Clerk of the San Francisco Superior Court.

25       15.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served

26  upon or by BofA in the State Court Action, including the Summons and Complaint, are attached

27  hereto as **Exhibit 1**.

28

**DEMAND FOR JURY TRIAL**

16.     Defendant BofA hereby demands a jury trial in the above-entitled action.


DATED:  August 27, 2018                         SEVERSON & WERSON
                                                A Professional Corporation



                                        By:        /s/ Diane P. Cragg
                                                    Diane P. Cragg

                                        Attorneys for Defendant BANK OF AMERICA, N.A.

# EXHIBIT 1

2/6

JUN 2 6 2018

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

Bank of America, N.A.; Care.com, Inc. dba Care.com; Meletofetofe Uhila; Tony Yamini; and DOES 1 through 100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

Terry Ann McIntosh, individually and as Co-Trustee of the Terry Ann McIntosh Trust; [additional parties Attached]

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. ¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es): San Francisco County Superior Court

**CGC-18-567720**

400 McAllister Street
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Kathryn Stebner, Stebner and Associates, 870 Market St., Ste. 1212, San Francisco, CA 94102; 415-362-9800

**CLERK OF THE COURT**

| DATE: | JUN 2 8 2018 | Clerk, by | DE LA VEGA-NAVARRO, Rossany | Deputy |
|-------|-------------|-----------|------------------------------|--------|
| (Fecha) | | (Secretario) | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served

(SEAL)

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): BANK OF AMERICA, N.A.   BY FAX
   THE LEGAL LLC

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):   JUL 2 6 2018
4. ☒ by personal delivery on (date):

Page 1 of 1

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE:<br>Terry Ann McIntosh, et al. v. Bank of America, N.A., et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[✓] Plaintiff     [ ] Defendant     [ ] Cross-Complainant     [ ] Cross-Defendant

and Melanie Smith, as Co-Trustee of the Terry Ann McIntosh Trust

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1  KATHRYN A. STEBNER (SBN 121088)
   DEENA K. ZACHARIN (SBN 141249)
2  STEBNER AND ASSOCIATES
   A PROFESSIONAL LAW CORPORATION
3  870 Market Street, Suite 1212
   San Francisco, CA 94102
4  Tel:   (415) 362-9800
   Fax:   (415) 362-9801
5
   CRAIG NEEDHAM (SBN 52010)
6  KIRSTEN FISH (SBN 217940)
   **NEEDHAM KEPNER & FISH LLP**
7  1960 The Alameda, Suite 210
   San Jose, CA 95126
8  Tel:   (408) 244-2166
9  Fax:   (408) 244-7815

10 Attorneys for Plaintiffs

11            SUPERIOR COURT OF THE STATE OF CALIFORNIA
                   COUNTY OF SAN FRANCISCO
12
                                                CGC-18-567720
13 TERRY ANN MCINTOSH, individually and as    CASE NO.  CGC-18-567720
14 Co-Trustee of the Terry Ann McIntosh Trust;
   and MELANIE SMITH, as Co-Trustee of the    **COMPLAINT FOR DAMAGES**
15 Terry Ann McIntosh Trust,
                                              1.  Financial Elder Abuse;
16         Plaintiffs,                         2.  Negligence;
                                              3.  Violation of Electronic Funds Transfer
17 vs.                                            Act;
                                              4.  Unlawful, Unfair and Deceptive
18 BANK OF AMERICA, N.A.; CARE.COM,               Business Practices; and
   INC. dba CARE.COM; MELETOFETOFE           5.  Breach of Fiduciary Duty
19 UHILA; TONY YAMINI; and DOES 1 through
20 100, Inclusive,                           **JURY TRIAL DEMANDED**

21         Defendants.                                        BY FAX
                                                             ONE LEGAL, LLC
22
23      Plaintiffs TERRY ANN MCINTOSH, individually and as Co-Trustee of the Terry Ann

24 McIntosh Trust, and MELANIE SMITH, as Co-Trustee of the Terry Ann McIntosh Trust

25 (hereinafter "Plaintiffs"), allege as follows against BANK OF AMERICA, N.A.; CARE.COM, INC.

26 dba CARE.COM; MELETOFETOFE UHILA; TONY YAMINI and DOES 1 through 100, inclusive

27 (hereinafter referred to collectively as "Defendants"):

                                        -1-
                                              COMPLAINT FOR DAMAGES

**INTRODUCTION**

1.     Plaintiffs bring this action for financial elder abuse against the individual who took, appropriated, obtained, and retained the personal property of TERRY ANN MCINTOSH, an elderly disabled woman, to the tune of over $245,000.00 for a wrongful use or with intent to defraud, or both and against the financial institution and the caregiving service that knew or should have known that TERRY ANN MCINTOSH's age and disability made her vulnerable to such undue influence and financial elder abuse and knew or should have known that over 59 uncharacteristic transactions to the same caregiver were the result of financial elder abuse, yet took no steps to protect against it and instead, assisted in the taking of TERRY ANN MCINTOSH's property for a wrongful use or with intent to defraud, or both.

2.     Elderly and disabled people, especially those who are dependent on others for assistance, are at foreseeable risk of financial abuse.  Indeed, the Legislature enacted the California Elder Abuse and Dependent Adult Civil Protection Act ("EADAPCA") (Welfare & Institutions Code §§ 15600-15675) because it recognized that "elders and dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect these persons." (Welf. & Inst. Code § 15600).

**PARTIES**

3.     Plaintiff TERRY ANN MCINTOSH is and was at all times herein mentioned a resident of the County of San Mateo, State of California.  At all times mentioned, Plaintiff TERRY ANN MCINTOSH was an elder within the meaning of Welfare & Institutions Code §15610, et seq. TERRY ANN MCINTOSH and her daughter, plaintiff MELANIE SMITH, are co-trustees of the Terry Ann McIntosh Trust. MELANIE SMITH is the duly appointed attorney-in-fact of TERRY ANN MCINTOSH.

4.     Plaintiff TERRY ANN MCINTOSH, who at 75 years-old suffered from the neuromuscular disease Charcot-Marie-Tooth ("CMT") and who had suffered two TIA's within three years before the time of the claims alleged herein, is and was a senior citizen who was substantially more vulnerable than other members of the public to the conduct of Defendants because of her age

1    and disability, and TERRY ANN MCINTOSH actually suffered substantial economic and

2    emotional damage resulting from the conduct of Defendants, as described below.

3         5.    Defendant Bank of America, N. A. ("BANK OF AMERICA") is a national banking

4    association and an active Delaware corporation registered to do business and doing business in

5    California through the California Department of Business Oversight.

6         6.    Defendant CARE.COM, INC., doing business as CARE.COM ("CARE.COM") is a

7    Delaware Corporation, doing business in the State of California with a business address of 217 2nd

8    Street, San Francisco, California.

9         7.    Defendant MELETOFETOFE UHILA ("UHILA") is an individual over the age of 18

10   years and was at all times herein mentioned a resident of California.

11        8.    Defendant TONY YAMINI ("YAMINI") is an individual over the age of 18 years

12   and was at all times herein mentioned a resident of California. At the time of the transactions at

13   issue herein, YAMINI was employed by the BANK OF AMERICA as a "Vice President, Financial

14   Center Manager" at its branch at 2031 Ralston Avenue, Belmont, California.

15        9.    Plaintiffs are ignorant of the true names and capacities, whether individual, corporate,

16   associate or otherwise and the true involvement of those Defendants named and sued herein as

17   DOES 1 through 100, and for that reason has sued said Defendants by such fictitious names.

18   Plaintiffs will seek leave to amend this complaint to reflect their true names when ascertained.

19   Plaintiffs are informed and believe, and accordingly allege, that each of the Defendants sued herein

20   as DOES 1 through 100 is responsible in some manner for the occurrences alleged in this action and

21   that these Defendants proximately caused the harms suffered by plaintiff.

22        10.   Plaintiffs are further informed and believe, and accordingly allege, that at all relevant

23   times each of the Defendants was the employer, employee, agent, servant, alter ego, principal, or

24   subsidiary of the other Defendants and at all times acted within the course and scope of such

25   employment or agency and with the knowledge and approval of said co-Defendants.  In particular,

26   at all times material hereto, Defendants individually and through their officers, directors, and/or

27   managing agents, (i) had advance knowledge of the unfitness of their employees and employed said

1   employees with a conscious disregard of the rights and safety of others, (ii) authorized the wrongful

2   conduct alleged in this complaint, and/or (iii) were personally guilty of oppression, fraud, malice

3   and/or recklessness.

4        11.    In doing the things alleged herein, DOES 1 through 25, and each of them, acted as

5   the agent, servant, employee and alter-ego of co-defendant BANK OF AMERICA. At all times

6   herein mentioned, DOES 1 through 25, and each of them, further acted as the partner, joint venturer,

7   representative and/or co-conspirator of one or more of the remaining BANK OF AMERICA

8   defendants, and was acting within the course and scope of such agency, partnership, joint venture,

9   employment and/or conspiracy.

10       12.    In doing the things alleged herein, DOES 26 through 50, and each of them, acted as

11  the agent, servant, employee and alter-ego of co-defendant CARE.COM. At all times herein

12  mentioned, DOES 26 through 50, and each of them, further acted as the partner, joint venturer,

13  representative and/or co-conspirator of one or more of the remaining CARE.COM defendants, and

14  was acting within the course and scope of such agency, partnership, joint venture, employment

15  and/or conspiracy.

16       13.    In doing the things alleged herein, DOES 51 through 60, and each of them, acted as

17  the agent, servant, employee and alter-ego of co-defendant UHILA. At all times herein mentioned,

18  DOES 51 through 60, and each of them, further acted as the partner, joint venturer, representative

19  and/or co-conspirator of one or more of the remaining UHILA defendants, and was acting within the

20  course and scope of such agency, partnership, joint venture, employment and/or conspiracy.

21       14.    In doing the things alleged herein, DOES 61 through 70, and each of them, acted as

22  the agent, servant, employee and alter-ego of co-defendant YAMINI. At all times herein mentioned,

23  DOES 61 through 70, and each of them, further acted as the partner, joint venturer, representative

24  and/or co-conspirator of one or more of the remaining YAMINI defendants, and was acting within

25  the course and scope of such agency, partnership, joint venture, employment and/or conspiracy.

26  //

27  //

## JURISDICTION AND VENUE

15.     This Court has jurisdiction under Code of Civil Procedure §410.10.  Plaintiffs' damages exceed the jurisdictional minimum of this Court.

16.     Venue is proper in San Francisco County under Code of Civil Procedure §395.5 based on the facts, without limitation, that CARE.COM's principal business address in California is 217 - 2nd Street, San Francisco, California.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

17.     At all times mentioned herein, TERRY ANN MCINTOSH had multiple accounts at BANK OF AMERICA, titled in both her revocable trust (as the "Terry Ann McIntosh Revocable Living Trust DTD 5-06-1988" and/or the "Terry Ann McIntosh Trust") and as an individual, and had been a customer of BANK OF AMERICA's Belmont Financial Center branch for over 15 years. TERRY ANN MCINTOSH would enter said branch at least weekly, where she would interact in person with the tellers and Defendants' managing agents, including but not limited to YAMINI. At BANK OF AMERICA, she would make deposits and withdrawals in person. During her frequent visits to the BANK OF AMERICA, Plaintiffs are informed and believe, and accordingly allege, that Defendants' bank employees and managing agents, including but not limited to YAMINI, personally observed TERRY ANN MCINTOSH become more and more disabled over the years due to her advanced age and neuromuscular disease, declining from walking unassisted, to walking with a cane, to walking with a walker, to entering the bank in a wheelchair with a caregiver who would assist her with her banking.

18.     Unbeknownst to Plaintiffs, and although TERRY ANN MCINTOSH was a senior citizen, disabled and needed assistance with her banking, BANK OF AMERICA changed TERRY ANN MCINTOSH's account statements to online delivery only, therefore, TERRY ANN MCINTOSH did not receive paper statements in the mail at her home to review. TERRY ANN MCINTOSH did not have much experience with computers, and was easily confused by online banking, which was the reason she relied on her caregiver to help with online banking and bill paying. Plaintiffs are informed and believe that BANK OF AMERICA failed to follow their own

1    policies and procedures regarding financial elder abuse, failed to train its employees for the signs to

2    recognize in connection with financial elder abuse, and breached their duty of care to TERRY ANN

3    MCINTOSH, and as a direct result, Defendant caregiver UHILA was able to transfer over

4    $245,000.00 from TERRY ANN MCINTOSH's BANK OF AMERICA accounts to UHILA's

5    BANK OF AMERICA account.

6        19.     TERRY ANN MCINTOSH applied for a caregiver on CARE.COM precisely

7    because she needed assistance with her daily activities. CARE.COM allowed TERRY ANN

8    MCINTOSH to rely on their caregivers, including UHILA, to provide her with care. CARE.COM's

9    marketing materials state that "Care.com is the world's largest online destination for care. We

10    connect families with caregivers and caring companies to help you be there for the ones you love"

11    and provides "quality," "perfect" caregivers and the "best home care."   In fact, the CARE.COM

12    website markets the company as one that elders and dependent adults can trust, stating, in the first

13    line of the website in large font, "**Trusted by families.**" Yet CARE.COM did not adequately vet the

14    caregivers they listed, and failed to properly train, supervise, monitor, and investigate the caregivers

15    CARE.COM held out as being "quality," "perfect" and the "best." CARE.COM breached their duty

16    of care to TERRY ANN MCINTOSH, and as a direct result, she was left alone constantly with

17    Defendant UHILA, creating an environment for, and causing, financial elder abuse.

18        20.     Plaintiffs are informed and believe that UHILA opened an account at BANK OF

19    AMERICA with an initial transfer from TERRY ANN MCINTOSH's BANK OF AMERICA

20    account in the amount of $10,000.00 on October 8, 2015.  After that initial suspicious transfer raised

21    no alarm with BANK OF AMERICA, and BANK OF AMERICA failed to alert Plaintiffs of the

22    transfer, UHILA proceeded to transfer sums from TERRY ANN MCINTOSH's BANK OF

23    AMERICA account to UHILA's BANK OF AMERICA account ranging from $2,000.00 to

24    $10,000.00 at least 44 more times over the next nine months with no alert or warning to Plaintiffs

25    from BANK OF AMERICA. In July 2016, UHILA was not available to assist TERRY ANN

26    MCINTOSH with her banking, and TERRY ANN MCINTOSH asked her other caregiver to check

27    her balance. The caregiver noticed in TERRY ANN MCINTOSH's online statement a transfer to

1    UHILA in the amount of $9,000.00. TERRY ANN MCINTOSH had not authorized that transfer.

2    TERRY ANN MCINTOSH and her other caregiver immediately went to the Belmont branch of

3    BANK OF AMERICA and informed YAMINI of the transfer, and it was discovered that several

4    other transfers had been made by the BANK OF AMERICA to UHILA. Bank manager YAMINI

5    informed TERRY ANN MCINTOSH that he would call the BANK OF AMERICA fraud division,

6    and told Plaintiffs to call the police, which they did. A criminal case was commenced against

7    UHILA, who was convicted and sentenced in February 2017. BANK OF AMERICA and YAMINI

8    did not contact TERRY ANN MCINTOSH after she brought the transfers to Defendants' attention

9    in July 2016.

10        21.    At the time of the transactions in question, transactions which took over $245,000.00

11   of her savings, TERRY ANN MCINTOSH was in her mid-70's. TERRY ANN MCINTOSH's age

12   is relevant because, aging brains such as hers are particularly susceptible to deceptive and predatory

13   practices. According to a study funded by the National Institute of Aging's Behavioral and Social

14   Research, at least 22% of adults in their 70's suffer from cognitive decline which impacts financial

15   management skills, results in poor decision-making and leaves them particularly vulnerable.

16        22.    After the $10,000 initial transfer from TERRY ANN MCINTOSH's BANK OF

17   AMERICA account to UHILA's BANK OF AMERICA account, the 44 additional online transfers

18   UHILA made from TERRY ANN MCINTOSH's BANK OF AMERICA accounts to her BANK OF

19   AMERICA account were identified by BANK OF AMERICA as follows:

| #  | Date     | Transfer                                         | Amount      |
|----|----------|--------------------------------------------------|-------------|
| 1. | 10/08/15 | Online Banking Transfer Conf# xxxxmmt; Uhila     | $10,000.00  |
| 2. | 10/15/15 | Online Banking Transfer Conf# xxxxuifd; Uhila    | $2,000.00   |
| 3. | 10/20/15 | Online Banking Transfer Conf# xxxxx7kvn; Uhila   | $3,000.00   |
| 4. | 10/26/15 | Online Banking Transfer Conf# xxxxxbdcc; Uhila   | $2,500.00   |
| 5. | 11/3/15  | Online Banking Transfer Conf #xxxxx9033; Uhila   | $4,000.00   |
| 6. | 11/09/15 | Online Banking Transfer Conf# xxxxx9x0e; Uhila   | $4,000.00   |
| 7. | 11/19/15 | Online Banking Transfer Conf# xxxxx021x; Uhila   | $4,000.00   |

COMPLAINT FOR DAMAGES

| | | | |
|---|---|---|---|
| 8. | 11/25/15 | Online Banking Transfer Conf# xxxxx03cz; Uhila | $4,000.00 |
| 9. | 11/30/15 | Online Banking Transfer Conf# xxxxx369q; Uhila | $4,000.00 |
| 10. | 12/7/15 | Online Banking Transfer Conf# xxxxxlj1p; Uhila | $4,000.00 |
| 11. | 12/10/15 | Online Banking Transfer Conf# xxxxxpmdf; Uhila | $5,000.00 |
| 12. | 12/14/15 | Online Banking Transfer Conf# xxxxxen8z; Uhila | $5,000.00 |
| 13. | 12/15/15 | Online Banking Transfer Conf# xxxxxky46; Uhila | $2,000.00 |
| 14. | 12/21/15 | Online Banking Transfer Conf# xxxxx1wng; Uhila | $5,000.00 |
| 15. | 12/24/15 | Online Banking Transfer Conf #xxxxxtoly; Uhila | $5,000.00 |
| 16. | 12/29/15 | Online Banking Transfer Conf# xxxxxu7qy; Uhila | $5,000.00 |
| 17. | 1/4/16 | Online Banking Transfer Conf# xxxxxtulk; Uhila | $5,000.00 |
| 18. | 1/12/16 | Online Banking Transfer Conf# xxxxx1cuj; Uhila | $5,000.00 |
| 19. | 1/19/16 | Online Banking Transfer Conf# xxxxxb70d; Uhila | $5,000.00 |
| 20. | 1/28/16 | Online Banking Transfer Conf# xxxxx2oed; Uhila | $5,000.00 |
| 21. | 2/04/16 | Online Banking Transfer Conf# xxxxxlsu6; Uhila | $5,000.00 |
| 22. | 2/9/16 | Online Banking Transfer Conf# xxxxxgnlk; Uhila | $5,000.00 |
| 23. | 2/16/16 | Online Banking Transfer Conf# xxxxxfyk9; Uhila | $3,000.00 |
| 24. | 2/23/16 | Online Banking Transfer Conf# xxxxxafa0; Uhila | $7,000.00 |
| 25. | 3/03/16 | Online Banking Transfer Conf# xxxxxei04; Uhila | $5,000.00 |
| 26. | 3/14/16 | Online Banking Transfer Conf# xxxxxd6mp; Uhila | $7,000.00 |
| 27. | 3/17/16 | Online Banking Transfer Conf# xxxxx07md; Uhila | $7,000.00 |
| 28. | 3/28/16 | Online Banking Transfer Conf# xxxxxh183; Uhila | $5,000.00 |
| 29. | 4/5/16 | Online Banking Transfer Conf# xxxxxmrvh; Uhila | $7,000.00 |
| 30. | 4/11/16 | Online Banking Transfer Conf# xxxxx893l; Uhila | $7,000.00 |
| 31. | 4/22/16 | Online Banking Transfer Conf# xxxxxfnbp; Uhila | $5,000.00 |
| 32. | 4/26/16 | Online Banking Transfer Conf# xxxxxygo2; Uhila | $7,000.00 |
| 33. | 5/3/16 | Online Banking Transfer Conf# xxxxxhtz4; Uhila | $7,000.00 |
| 34. | 5/16/16 | Online Banking Transfer Conf# xxxxxrlyr; Uhila | $7,000.00 |
| 35. | 5/24/16 | Online Banking Transfer Conf# xxxxx6gkg; Uhila | $7,000.00 |
| 36. | 6/03/16 | Online Banking Transfer Conf# xxxxxn2tz; Uhila | $7,000.00 |
| 37. | 6/10/16 | Online Banking Transfer Conf# xxxxxjenc; Uhila | $9,000.00 |

COMPLAINT FOR DAMAGES

| | | | |
|---|---|---|---|
| 38. | 6/14/16 | Online Banking Transfer Conf# xxxxxb1nv; Uhila | $7,000.00 |
| 39. | 6/20/16 | Online Banking Transfer Conf# xxxxx1c5h; Uhila | $4,000.00 |
| 40. | 6/23/16 | Online Banking Transfer Conf# xxxxx1lsa; Uhila | $7,000.00 |
| 41. | 7/05/16 | Online Banking Transfer Conf# xxxxxgk82; Uhila | $8,000.00 |
| 42. | 7/07/16 | Online Banking Transfer Conf# xxxxxhkfm; Uhila | $3,000.00 |
| 43. | 7/14/16 | Online Banking Transfer Conf# xxxxxvaxn; Uhila | $5,000.00 |
| 44. | 7/14/16 | Online Banking Transfer Conf# xxxxxjab1; Uhila | $3,000.00 |
| 45. | 7/20/16 | Online Banking Transfer Conf# xxxxxcalk; Uhila | $9,000.00 |

These fraudulent online transfers by UHILA from TERRY ANN MCINTOSH's BANK OF AMERICA accounts to her own BANK OF AMERICA account total at least $241,500.00. Plaintiffs are informed and believe that the transfers to UHILA were the only "online banking transfers" ever made from TERRY ANN MCINTOSH's BANK OF AMERICA accounts during the subject period.

23.    Beginning on November 9, 2015, UHILA used TERRY ANN MCINTOSH's BANK OF AMERICA check card for a purchase in the amount of $108.91. After that initial use of TERRY ANN MCINTOSH's BANK OF AMERICA check card raised no alarm with BANK OF AMERICA or YAMINI, and BANK OF AMERICA and YAMINI failed to alert Plaintiffs of the fraudulent use, UHILA proceeded to use TERRY ANN MCINTOSH's BANK OF AMERICA check card at least 11 additional times over the next nine months to make purchases ranging from $20.98 to $316.98. These fraudulent "check card" transactions made from TERRY ANN MCINTOSH's BANK OF AMERICA accounts to UHILA were listed by BANK OF AMERICA as follows:

| # | Date | Transaction | Amount |
|---|---|---|---|
| 1. | 11/09/15 | Nordstrom | $108.91 |
| 2. | 03/15/16 | Esurance | $271.86 |
| 3. | 04/05/16 | Hulu | $20.98 |
| 4. | 04/05/16 | Hulu | $20.98 |
| 5. | 06/01/16 | Southwest Airlines | $316.98 |
| 6. | 06/01/16 | Southwest Airlines | $316.98 |
| 7. | 06/14/16 | Caesars Hotel, NV | $200.00 |

| 8.  | 06/14/16 | Caesars Hotel, NV | $192.43 |
| 9.  | 06/14/16 | Caesars Hotel, NV | $112.44 |
| 10. | 06/15/16 | Caesars Hotel, NV | $192.01 |
| 11. | 06/17/16 | Caesars Hotel, NV | $200.00 |
| 12. | 06/22/16 | Caesars Hotel, NV | $163.03 |

These fraudulent "check card" transactions by UHILA from TERRY ANN MCINTOSH's BANK OF AMERICA check card account total $2,116.60.

24.     Beginning on October 19, 2015, UHILA obtained a "counter credit" from TERRY ANN MCINTOSH's BANK OF AMERICA account in the amount of $300.00. After that initial use of TERRY ANN MCINTOSH's BANK OF AMERICA account by UHILA to obtain $300.00 cash raised no alarm with BANK OF AMERICA or YAMINI, and BANK OF AMERICA and YAMINI failed to alert Plaintiffs of the fraudulent use, UHILA proceeded to obtain cash from TERRY ANN MCINTOSH's BANK OF AMERICA account at least three additional times over the next nine months in amounts ranging from $900.00 to $1,400.00.

25.     The four fraudulent "Counter Credit" transactions made from TERRY MCINTOSH's BANK OF AMERICA accounts to UHILA were listed by BANK OF AMERICA as follows:

| #  | Date     | Amount    |
|----|----------|-----------|
| 1. | 10/19/15 | $300.00   |
| 2. | 04/01/16 | $1,400.00 |
| 3. | 04/01/16 | $900.00   |
| 4. | 05/04/16 | $1,100.00 |

These fraudulent "Counter Credit" transactions from TERRY MCINTOSH's BANK OF AMERICA to UHILA total $3,700.00.

26.     Financial elder abuse is regarded as one of the most commonly substantiated types of elder abuse. As of 2009, the annual financial loss by victims nationwide was estimated by the National Council on Aging to be at least $2.6 billion dollars. The Government Accountability Office

in 2012 cited financial elder abuse as "an epidemic with society-wide repercussions." "Almost by definition, the challenge for financial services companies is more direct and urgent as they are often holding 'the keys to the kingdom' on which the abusers have set their sights. To respond to this daunting task, individual banks and brokerage firms, and the financial services industry as a whole, have undertaken a number of initiatives to detect, deter, and respond to the elder financial abuse events they are seeing more of every day." (National Research Council: Elder Abuse and Its Prevention. Washington (DC): National Academies Press; [2014.])

27.     The Consumer Financial Protection Bureau, a federal agency responsible for consumer protection in the financial sector, acknowledged that "financial institutions play a vital role in preventing and responding to this type of elder abuse," and therefore made the following recommendations to banks and credit unions:

    a.   Develop, implement and maintain internal protocols and procedures for protecting account holders from elder financial exploitation.

    b.   Train management and staff to prevent, detect, and respond to elder financial exploitation.

    c.   Detect elder financial exploitation by harnessing technology.

    d.   Report all cases of suspected exploitation to relevant federal, state and local authorities.

    e.   Protect older account holders.

28.     The Financial Crimes Enforcement Network (FinCEN) issued an advisory to banks such as BANK OF AMERICA "to assist the financial industry in reporting instances of financial exploitation of the elderly, a form of elder abuse." The advisory informed banks that "Financial institutions can play a key role in addressing elder financial exploitation due to the nature of the client relationship. Often, financial institutions are quick to suspect elder financial exploitation based on bank personnel familiarity with their elderly customers. The valuable role financial institutions can play in alerting appropriate authorities to suspected elder financial exploitation has received increased attention at the state level; this focus is consistent with an upward trend at the

1  federal level in Suspicious Activity Reports (SARs) describing instances of suspected elder financial

2  exploitation. Analysis of SARs reporting elder financial exploitation can provide critical

3  information about specific frauds and potential trends, and can highlight abuses perpetrated against

4  the elderly." The advisory contains examples of "red flags" of financial exploitation of the elderly

5  reported in SARs, including but not limited to the exact activities that occurred with TERRY ANN

6  MCINTOSH's BANK OF AMERICA accounts:

7    a.  Erratic or unusual banking transactions.

8    b.  Changes in typical banking patterns.

9    c.  Frequent large withdrawals.

10    d.  Debit transactions that are inconsistent for an older adult.

11    e.  A caregiver's or other individual's excessive interest in an older adult's finances or

12        assets.

13    f.  A new caretaker's, relative's or friend's sudden commencement of financial

14        transactions on the older adult's behalf without proper documentation.

15    29.    Each of the subject BANK OF AMERICA transfers detailed above constituted an

16  erratic and unusual banking transaction for TERRY ANN MCINTOSH. In fact, each constituted a

17  profound change in her banking pattern with BANK OF AMERICA. Of course, those transfers also

18  constituted "frequent large withdrawals." Yet, despite all these hallmarks of financial elder abuse,

19  BANK OF AMERICA and YAMINI did nothing to stop it -- nothing. Instead, BANK OF

20  AMERICA and YAMINI just continued knowingly assisting the blatant financial elder abuse of

21  their long-time customer until over $245,000.00 of her life savings was gone. In fact, the total of the

22  transfers in each month exceeded the U.S. Department of the Treasury's $10,000.00 threshold

23  requiring the filing of a "Currency Transaction Report," or "Suspicious Activity Report," which

24  should have thereby invoked the scrutiny of BANK OF AMERICA's management, including but not

25  limited to YAMINI. That scrutiny would have necessarily focused upon (and thereby informed

26  BANK OF AMERICA's management of) the identity of the customer initiating the suspicious

27  transfers (including the customer's history of prior similar transactions), the amount of the

1    suspicious transactions and the identity of the recipient which, of course, included the fact that the

2    recipient's BANK OF AMERICA account had only recently been opened, likely only included

3    transfers from the BANK OF AMERICA accounts of the elderly and disabled TERRY ANN

4    MCINTOSH and also included use of her check card. Yet, despite the fact that each suspicious

5    transaction in the sudden series of uncharacteristic transfers was for a very large amount and was

6    being sent to a new account which had no connection to TERRY ANN MCINTOSH, BANK OF

7    AMERICA's management, including but not limited to YAMINI, did nothing to stop its knowing

8    assistance of this blatant financial elder abuse.

9        30.    Plaintiffs are informed and believe that BANK OF AMERICA's job description for

10   its "Financial Center Client Service Representative I" position shows that BANK OF AMERICA

11   seeks out representatives with the "[a]bility to identify customer financial needs, goals and

12   objectives; [is] comfortable asking customer about their personal finances," "[a]bility to sell

13   customers on meeting with a sales associate to learn about products/services" and "[a]bility to

14   respond and assist customers with inquiries and/or problem resolution." BANK OF AMERICA,

15   however, focuses virtually all of its employee training on developing the representative's abilities to

16   sell BANK OF AMERICA products and services, and complete transaction correctly, and,

17   conversely, none on training representatives like those at the BANK OF AMERICA Belmont

18   branch, or the representatives handling online transfers, on their duty not to knowingly assist

19   financial elder abuse or how to report and prevent financial elder abuse.

20       31.    The Board of Governors of the Federal Reserve System has joined with seven other

21   federal agencies in issuing an "Interagency Guidance on Privacy Laws and Reporting Financial

22   Abuse of Older Adults" ("Interagency Guidance") to financial institutions such as BANK OF

23   AMERICA. The Interagency Guidance clarified the privacy provisions of the Gramm-Leach-Bliley

24   Act. Specifically, the Interagency Guidance reminded financial institutions such as BANK OF

25   AMERICA that section 502(e) of that Act provides a variety of exceptions to the privacy restrictions

26   and those exceptions permit a financial institution to disclose information to non-affiliated third

27   parties without first complying with notice and opt-out requirements. Specifically, the Interagency

1   Guidance acknowledged that a financial institution may disclose nonpublic personal information to

2   comply with federal, state or local laws, rules and other applicable legal requirements, such as state

3   laws that require reporting by financial institutions of suspected financial elder abuse. Those

4   exceptions also specifically permit financial institutions such as BANK OF AMERICA to disclose

5   nonpublic personal information to protect against or prevent actual or potential fraud.

6          32.     The Interagency Guidance to BANK OF AMERICA and other financial institutions

7   underscored what by then was a well-known problem in the banking community:

8          Recent studies suggest that financial exploitation is the most common form of
           elder abuse and that only a small fraction of incidents are reported. . . . Older
9          adults are attractive targets because they may have significant assets or equity in
           their homes. They may be especially vulnerable due to isolation, cognitive
10         decline, physical disability, health problems, and/or the recent loss of a partner,
11         family member, or friend.

12         Financial institutions can play a key role in preventing and detecting elder
           financial exploitation. A financial institution's familiarity with older adults it
13         encounters may enable it to spot irregular transactions, account activity, or
           behavior. Prompt reporting of suspected financial exploitation to adult protective
14         services, law enforcement, and/or long-term care ombudsmen can trigger
           appropriate intervention, prevention of financial losses, and other remedies.
15

16   It is hard to imagine any financial institution being more familiar with a client, or better positioned

17   to prevent such blatantly irregular transactions, account activity and behavior, than BANK OF

18   AMERICA and YAMINI were in TERRY ANN MCINTOSH's case. BANK OF AMERICA and

19   YAMINI knew or should have known TERRY MCINTOSH was caught in the throes of financial

20   elder abuse. After all, under these circumstances, *there was no other plausible explanation for the*

21   *61 transfers, counter credits, and check card debits detailed above from TERRY ANN*

22   *MCINTOSH's BANK OF AMERICA account by an unrelated party.*

23         33.     As the Interagency Guidance confirms, financial institutions like BANK OF

24   AMERICA have the potential to play a critical role in preventing the financial abuse of older

25   persons by reporting suspicious activity to Adult Protective Services agencies and local law

26   enforcement. Banks have the potential to be the "first line of defense" against financial abuse, by

27   identifying the abuse at its outset, before the elder's assets have been dissipated. No institution is in a

better position to observe and report suspicious behavior, such as an unusual volume of banking
activity or banking activity inconsistent with a customer's usual habits. As this case highlights,
however, BANK OF AMERICA's failure to properly train its representatives not to assist financial
elder abuse has resulted in its representatives knowingly assisting the most blatant financial elder
abuse.

34.     Prosecutors call financial exploitation of the elderly a "violent crime," not because of
any physical force used by the wrongdoer, but because of its lethal effects. According to a leading
resource on elder abuse, published for California Judicial Officers, the impacts of abuse include the
following:

    a.  Earlier morbidity for the elder, with the risk of death three times higher than for non-victims.

    b.  Significant health effects, including declining functional abilities; this often leads to progressive dependency, social isolation, a sense of helplessness, and a cycle of worsening stress and psychological decline.

See, "Elder Abuse Pocket Reference- A Medical/Legal Resource For California Judicial Officers," a
joint publication by the Judicial Council of California, Center of Excellence on Elder Abuse and
Neglect and Program in Geriatrics, UC Irvine School of Medicine (2012), page 8.

## FIRST CAUSE OF ACTION

### (Financial Elder Abuse Against all Defendants)

35.     Plaintiffs refer to, and incorporate herein by reference, all preceding paragraphs into
this cause of action as though fully set forth herein.

36.     The taking, secreting, appropriating, obtaining or retaining TERRY ANN
MCINTOSH'S property rights for a wrongful use or with intent to defraud, or both, or assisting in
such conduct, constitutes financial elder abuse within the meaning of Welfare & Institutions Code
§15610.30. Defendants, and each of them, engaged in such conduct either directly or assisted others
in such conduct within the meaning of Welf. & Inst. Code §15610.30(a), and "knew or should have
known" that this conduct was likely to be harmful to TERRY ANN MCINTOSH. Welf. & Inst.
Code §15610.30(b). Defendants, and each of them, knew or should have known that UHILA was

1   wrongfully taking money from TERRY ANN MCINTOSH, a woman who was disabled, elderly,

2   and particularly susceptible to undue influence by her caregiver.

3        37.    Defendant UHILA, a person held out by CARE.COM to be a "quality" and "trusted"

4   caregiver, exerted undue influence on TERRY ANN MCINTOSH to entice her to entrust UHILA

5   with her funds. EADAPCA defines undue influence as "excessive persuasion that causes another

6   person to act or refrain from acting by overcoming that person's free will and results in inequity. ..."

7   (Welf. & Inst. Code § 15610.70.) Once TERRY ANN MCINTOSH was persuaded to trust her,

8   UHILA took over $245,000.00 from TERRY ANN MCINTOSH by making online banking

9   transfers, counter credits and use of TERRY MCINTOSH's check card, as outlined in detail above.

10        38.    BANK OF AMERICA failed to create and/or follow policies and protocols to protect

11   its elderly customers from financial elder abuse. BANK OF AMERICA failed to ensure its

12   employees were properly trained to recognize and prevent financial elder abuse, and failed to

13   monitor and supervise its employees to ensure they were complying with the bank's policies. BANK

14   OF AMERICA failed to follow the standard of care in the financial industry as set forth by the U.S.

15   Department of the Treasury, Consumer Financial Protection Bureau, Financial Crimes Enforcement

16   Network and Board of Governors of the Federal Reserve System, among others, specifically

17   advising banks to train and monitor for financial elder abuse.  BANK OF AMERICA and YAMINI

18   knew or should have known that failing to follow the standard of care in the industry to monitor for

19   and protect against financial elder abuse, would subject TERRY ANN MCINTOSH to the

20   foreseeable risk of undue influence and financial elder abuse.

21        39.    CARE.COM failed to adequately investigate its caregivers before listing them on the

22   CARE.COM website. CARE.COM also knew or should have known that enticing elders to "trust"

23   these caregivers, and yet failing to properly vet, train, supervise, monitor and investigate the

24   activities of these caregivers they held out on their website as "quality," the "best," and "the perfect

25   caregiver for your family" would subject TERRY ANN MCINTOSH to the foreseeable risk of

26   undue influence and financial elder abuse.

27   //

40.    As a direct and proximate result of wrongful conduct of Defendants, and each of them, as alleged above, TERRY ANN MCINTOSH has suffered economic damages, and mental distress, anguish, upset, and anxiety, and has incurred attorney's fees and costs.

41.    By the conduct, acts and omissions of Defendants, and each of them, as alleged above, Defendants are guilty of recklessness, fraud, oppression, and/or malice.  The specific facts set forth above show a disregard of the high probability that TERRY ANN MCINTOSH would be injured.  In addition to special damages, Plaintiffs are therefore entitled to an award against Defendants, and each of them, of the reasonable attorney's fees and costs incurred in prosecuting this case as well as TERRY ANN MCINTOSH's pain and suffering pursuant to Welfare & Institutions Code §15657.  As a direct result of the abuse, neglect and/or abandonment of TERRY ANN MCINTOSH by Defendants, and each of them, TERRY ANN MCINTOSH suffered fear, anxiety, humiliation, physical pain and discomfort, and emotional distress, all to her general damage in a sum to be established according to proof.

42.    In addition to all other remedies provided by law, Plaintiffs are entitled to recover reasonable attorney's fees and costs for financial abuse pursuant to Welfare & Institutions Code §15657.5.

43.    Defendants' conduct constituted oppression, fraud, and malice in the commission of the financial abuse, and Plaintiffs are entitled to recover damages for the sake of example and by way of punishing Defendants for financial abuse pursuant to Civil Code §3294.

Wherefore, Plaintiffs seek relief as set forth below.

## SECOND CAUSE OF ACTION

**(Negligence against CARE.COM, BANK OF AMERICA, YAMINI and DOES 1-50, 61-70)**

44.    Plaintiffs refer to, and incorporate herein by reference, all preceding paragraphs into this cause of action as though fully set forth herein.

45.    As described above, the risk of financial elder abuse by caregivers is foreseeable, and CARE.COM knew or should have known that TERRY ANN MCINTOSH's age and disability made her vulnerable to undue influence and financial elder abuse.  CARE.COM also knew or should

have known that their caregivers had immediate access to, control, and total authority over elders and dependent adults in their care, including TERRY ANN MCINTOSH. They had a duty to adequately vet the caregivers who they held out as "quality caregivers," "perfect caregivers" and "the best home care" on their referral website, to protect TERRY ANN MCINTOSH from undue influence and financial elder abuse.

46.     As described above, the risk of financial elder abuse is foreseeable in the financial industry, and BANK OF AMERICA and YAMINI knew or should have known that TERRY ANN MCINTOSH's age and disability made her vulnerable to undue influence and financial elder abuse. As described above, BANK OF AMERICA and YAMINI knew that TERRY MCINTOSH's caregivers had immediate access to her BANK OF AMERICA accounts. They had a duty to TERRY ANN MCINTOSH to protect her from financial elder abuse.

47.     Being disabled and dependent on her caregivers for assistance with her activities of daily living, TERRY ANN MCINTOSH did not discover, and did not know of facts that would have caused a reasonable person to suspect, that she had suffered harm that was caused by Defendants until she learned of the theft in July 2016.

48.     Because TERRY ANN MCINTOSH was not able to do online banking by herself, she reasonably relied on Defendant UHILA to assist her with her online banking. Therefore, Plaintiffs did not discover, and did not know of facts that would have caused a reasonable person to suspect, that TERRY ANN MCINTOSH had suffered harm that was caused by Defendants, until they inadvertently learned on July 22, 2016 of the final unauthorized transfer from MCINTOSH's account to UHILA which occurred on July 20, 2016. TERRY ANN MCINTOSH diligently reported the taking to BANK OF AMERICA, YAMINI and the Police Department immediately upon learning of it from another of her caregivers.

49.     Said defendants, and each of them, owed a duty of care to Plaintiffs, and said defendants, and each of them, have breached that duty of care. As a result of said defendants' negligence, Plaintiffs were injured.

Wherefore, Plaintiffs seek relief as set forth below.

## THIRD CAUSE OF ACTION

**(Violation of Electronic Funds Transfer Act [15 U.S.C. §§1693g and 1693f] against**

**BANK OF AMERICA and DOES 1-25)**

50.     Plaintiffs refer to, and incorporate herein by reference, all preceding paragraphs into this cause of action as though fully set forth herein.

51.     15 U.S.C. §1693g provides:

A consumer shall be liable for any unauthorized electronic fund transfer involving the account of such consumer only if the card or other means as of access utilized for such transfer was an accepted card or other mean of access and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation.

52. 15 U.S.C. §1693a defines the term "accepted card and means of access" as follows:

The term "accepted card or other means of access" means a card, code, or other means of access to a consumer's account for the purpose of initiating electronic fund transfers when the person to whom such card or other means of access was issued has requested and received or has signed or has used, or authorized another to use, such card or other means of access for the purpose of transferring money between accounts or obtaining money, property, labor, or services.

53.     Plaintiff TERRY ANN MCINTOSH did not request, receive, sign or use, or authorize UHILA or any other person to access her BANK OF AMERICA accounts for the purpose of transferring TERRY ANN MCINTOSH's money between BANK OF AMERICA accounts. Therefore, the "Online Banking Transfers," counter credits and use of TERRY ANN MCINTOSH's BANK OF AMERICA check card were not accepted means of access.

54.     Plaintiffs are informed and believe and on that basis allege that UHILA electronically withdrew over $245,000.00 from TERRY ANN MCINTOSH's BANK OF AMERICA account(s) using a means of access that she established electronically without Plaintiffs' knowledge or consent. To the extent that UHILA used any means of access to electronically transfer funds from TERRY ANN MCINTOSH's BANK OF AMERICA account(s) or to purchase items using TERRY ANN MCINTOSH's check card or to receive counter credits, that means of access was not an accepted

1    card or accepted means of access.

2        55.    Plaintiffs are informed and believe and on that basis allege that 12 C.F.R. §205.6(a)

3    makes it clear that a bank customer, such as TERRY ANN MCINTOSH, cannot be held liable for

4    unauthorized electronic withdrawals from her account unless the withdrawals were made using an

5    accepted card and means of access, and that the time limitations for reporting violations set forth in

6    the regulation and statute do not apply to unauthorized withdrawals that did not involve an accepted

7    access card or other means of access.

8        56.    Plaintiffs are informed and believe and on that basis allege that 12 C.F.R. §205.6(b)

9    sets forth limitations of liability, such as the required time to file a report of an authorized

10   transaction, that apply only if the threshold condition set forth in paragraph (a) of the regulation

11   (i.e., that the unauthorized transaction involves an accepted device) is met.

12       57.    Because UHILA withdrew over $245,000.00 from TERRY ANN MCINTOSH's

13   BANK OF AMERICA account(s) using a debit card or other means of electronic access that was

14   not an accepted card or other means of access, 15 U.S.C. §1693 and 12 C.F.R. §205.6 precluded

15   BANK OF AMERICA from holding TERRY ANN MCINTOSH liable for that sum and required

16   BANK OF AMERICA to return the funds to Plaintiffs upon being notified of the unauthorized

17   taking of TERRY ANN MCINTOSH's property by UHILA.

18       58.    Plaintiffs are informed and believe and on that basis allege that BANK OF

19   AMERICA is liable for treble damages pursuant to 15 U.S.C. §1693f(e) because BANK OF

20   AMERICA could not reasonably have reached the conclusion that it was not liable to return the

21   transferred funds to Plaintiffs after having been notified of Plaintiffs' claim that the funds were not

22   withdrawn using an accepted card or means of access.

23       59.    Plaintiffs are informed and believe and on that basis allege that Plaintiffs are entitled

24   to an award of attorneys' fees pursuant to 15 U.S.C. §1693m(a)(3).

25       Wherefore, Plaintiffs seek relief as set forth below.

26   //

27   //

## FOURTH CAUSE OF ACTION

**(Unlawful, Unfair and Deceptive Business Practices [Business & Professions Code §17200 *et seq.*] against CARE.COM, BANK OF AMERICA and DOES 1-50)**

60. Plaintiffs refer to, and incorporate herein by reference, all preceding paragraphs into this cause of action as though fully set forth herein.

61. Business & Professions Code §17200 et seq. prohibits any person from engaging in unfair competition as that term is defined in Business and Professions Code §17200, which includes any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with §17500) of Part 3 of Division 7 of the Business & Professions Code."

62. Plaintiffs are informed and believe and on that basis allege that BANK OF AMERICA violated the Electronic Fund Transfer Act, including without limitation, 12 U.S.C. §§ 1693f, 1693g and 12 C.F.R. §205.6, when it failed to credit Plaintiffs' accounts after having been advised by TERRY ANN MCINTOSH that her funds were transferred from TERRY ANN MCINTOSH's BANK OF AMERICA accounts into a BANK OF AMERICA account created by UHILA using an access devise that was not an accepted card or means of access.

63. Plaintiffs are informed and believe and on that basis allege that the violation of the Electronic Fund Transfer Act alleged herein constituted an unlawful business practice, in violation of Business & Professions Code §17200 et seq.

64. Plaintiffs are informed and believe and on that basis allege that CARE.COM used unfair, deceptive, untrue or misleading advertising when it stated on its website that its caregiving services were "Trusted by families" and that they provided "quality" and "perfect" caregivers and the "best home care." CARE.COM's services for elders includes "companion care." Companionship is defined by the Merriam Webster dictionary as "the good feeling that comes from being with someone else," but instead, TERRY ANN MCINTOSH was subject to financial elder abuse by the companion she was provided by CARE.COM.

//

65.     Plaintiffs are informed and believe and on that basis allege that said defendants violated Welfare & Institutions Code §15610.30 when it assisted in the taking, secreting, appropriating, obtaining or retaining of TERRY ANN MCINTOSH's $245,000 for a wrongful use or with an intent to defraud, or both, as set forth herein. Plaintiffs are informed and believe and on that basis allege that the violation of Welfare & Institutions Code §15610.30 alleged herein constituted an unlawful business practice in violation of Business & Professions Code §17200 et seq.

66.     As a result of said defendants' unfair competition and unlawful business practices, as alleged herein, Plaintiffs have suffered injury in fact and lost money or property.

67.     Plaintiffs requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs all money which may have been acquired by means of such unlawful, unfair and/or deceptive business practices, as provided in Business & Professions Code §17203, and for such other relief as set forth below.

Wherefore, Plaintiffs seek relief as set forth below.

## FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty against BANK OF AMERICA and DOES 1-25)

68.     Plaintiffs refer to, and incorporate herein by reference, all preceding paragraphs into this cause of action as though fully set forth herein.

69.     As a financial institution to TERRY ANN MCINTOSH, a disabled senior over the age of 65, said defendants, and each of them, owed TERRY ANN MCINTOSH the duty of good faith and fair dealing. At all times relevant to this action, there existed between TERRY ANN MCINTOSH and said defendants, and each of them, a fiduciary and/or confidential relationship upon which TERRY ANN MCINTOSH justifiably relied to her detriment. By virtue of the relationship between TERRY ANN MCINTOSH and said defendants, a fiduciary duty existed. Pursuant to said duty, said defendants owed the utmost good faith and fairness to TERRY ANN MCINTOSH in all matters pertaining to said defendants' conduct with respect to TERRY ANN MCINTOSH's personal property.

70.    Said defendants accepted the reliance of TERRY ANN MCINTOSH on the fiduciary and/or confidential relationship.

71.    Said defendants breached the aforesaid duty as alleged herein, and in so doing gained an advantage over TERRY ANN MCINTOSH in matters relating to the management and control of her assets. In particular and without limiting the generality of the foregoing, in breaching said duty(ies) as alleged herein, said defendants are required to disgorge their profits, and Plaintiffs are entitled to an award in the amount of these profits, and interest on all such sums from the date of injury.

72.    As a result of said defendants' breach, TERRY ANN MCINTOSH suffered emotional and financial damages and losses.

Wherefore, Plaintiffs seek relief as set forth below.

## REQUEST FOR JURY TRIAL

Plaintiffs hereby request a jury trial.

## PRAYER FOR RELIEF

WHEREAS, Plaintiffs pray judgment against Defendants, and each of them, as follows:

1.    For general damages according to law and proof;

2.    For special damages according to law and proof;

3.    For costs of suit;

4.    For attorneys' fees;

5.    For statutory damages;

6.    For treble damages pursuant to Civil Code §3345;

7.    For treble damages pursuant to 15 U.S.C. §1693f(e);

8.    For punitive damages;

9.    For injunctive relief;

10.   For prejudgment interest according to law; and

COMPLAINT FOR DAMAGES

11.   For such other and further relief as the court may deem proper.

Dated: June 26, 2018

STEBNER AND ASSOCIATES

By:_____
Kathryn A. Stebner
Deena K. Zacharin
Attorneys for Plaintiffs